UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| NORMA VIPPERMAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 7:19-cv-00098-GFVT |
| | ) | |
| V. | ) | |
| | ) | |
| ANDREW M. SAUL, Commissioner of Social Security, | ) ) ) | **MEMORANDUM OPINION & ORDER** |
| Defendant. | ) ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiff Norma Jean Vipperman seeks judicial review of an administrative decision of the Commissioner of Social Security, which determined her disability had ended and therefore discontinued her disability insurance benefits. Ms. Vipperman brings this action pursuant to 42 U.S.C. § 405(g), alleging that the Commissioner's decision is not supported by substantial evidence. The Court, having reviewed the record and for the reasons that follow, will **DENY** Ms. Vipperman's Motion for Summary Judgment and **GRANT** the Commissioner's.

**I**

Ms. Vipperman originally filed for disability insurance benefits in 2010 and, in an ALJ decision dated September 10, 2010, was found to be disabled beginning August 15, 2007. [Transcript ("Tr.") 58.] On review, on September 21, 2015, the agency determined that she was no longer disabled as of August 1, 2015. *Id.* Following this decision, Ms. Vipperman requested a hearing before an administrative law judge. *Id.* That hearing was held on July 30, 2018. *Id.*; *see id.* at 78. After the hearing, on August 31, 2018, Administrative Law Judge Maria Hodges returned an unfavorable decision as to Ms. Vipperman's claim. *Id.* at 58–70. Ms. Vipperman then requested review from the Appeals Council, which denied the request. *Id.* at 1.

To determine if a claimant continues to be disabled, an ALJ conducts an eight-step sequential analysis. *See* 20 C.F.R. § 404.1594(f). First, the ALJ examines whether the claimant is engaging in substantial gainful activity. If so, the claimant is no longer disabled. At Step 2, the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, his disability continues and the analysis ends. If not, the analysis continues.

The next steps focus on medical improvement—often the critical question in this context. At Step 3, the ALJ must determine whether the claimant has experienced medical improvement. At Step 4, the ALJ determines whether any medical improvement is related to the claimant's ability to work. If there has not been medical improvement or if the improvement is unrelated to the individual's ability to work, the ALJ continues to Step 5 to consider whether any exceptions to the medical-improvement standard apply. If there has been medical improvement related to the claimant's ability to work or an exception to the medical-improvement standard applies, the analysis proceeds to Step 6. Here, the ALJ must determine whether the claimant's current impairments are severe. If not, the claimant is no longer disabled. At Step 7, the ALJ assesses the claimant's residual functional capacity (RFC) based on current impairments and determines if he can perform past relevant work. If the answer is no, the ALJ proceeds to the last step and determines whether a significant number of other jobs exist in the national economy that the claimant can perform. If he can perform other work, the claimant is no longer disabled. If not, his disability continues.

In termination proceedings, there is no presumption of continuing disability. *Kennedy v. Astrue*, 247 F. App'x 761, 764 (6th Cir. 2007). However, the "ultimate burden of proof lies with

the Commissioner." *Id.* (citation omitted); *see also* 20 C.F.R. § 404.1594(a).

In this case, at Step 1, the ALJ found Ms. Vipperman had not engaged in substantial gainful activity since the September 2010 decision which initially provided her disability benefits. [Tr. 60.] At Step 2, the ALJ found that since August 1, 2015, the date the prior disability ended, Ms. Vipperman's medically determinable impairments consisted of goiter, degenerative disc disease, osteoarthritis, chronic obstructive pulmonary disease (COPD), bipolar disorder, and anxiety disorder. *Id*. The ALJ determined, however, that Ms. Vipperman did not have an impairment or combination of impairments that met or medically equaled the degree of severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. Specifically, the ALJ found that the "record does not show any significant problems with ambulating or performing fine and gross movement," as necessary to meet listing 1.02. *Id.* at 61. And, with regards to listing 1.04, the ALJ found that while Ms. Vipperman had degenerative disc disease, there was a lack of evidence that the condition resulted in nerve root compromise or in an inability to ambulate effectively. *Id*. Similarly, with regards to listings 3.03 and 9.00, the ALJ noted that the relevant evidence, or lack thereof, was insufficient to establish the necessary complications as required for the impairments to meet the respective listings. *Id*. With regards to listings 3.02, the ALJ noted that the medical evidence did not contain pulmonary functioning studies with the necessary scores needed to meet the listing. *Id*. Lastly, with regards to listings 12.04 and 12.06, the ALJ found Ms. Vipperman's "mental impairments, considered singly or in combination" were insufficient to satisfy the paragraph B or C criteria. *Id.* at 61–62.

Next, at Step 3, the ALJ determined that medical improvement had occurred. *Id*. at 63. In support of this determination, the ALJ noted that "the medical evidence shows little treatment for mental impairments" and that "[t]he treatment physicians reported the claimant had normal

3

mental exams." *Id.* Consequently, the ALJ determined Ms. Vipperman had the RFC to perform simple, routine, and repetitive tasks, and engage in only occasional interactions with others—a capacity that was less restrictive than at the time of the 2010 decision. *Id.* So, at Step 4, the ALJ found Ms. Vipperman's medical improvement was related to the ability to work given the increase in her RFC. *Id.* Proceeding to Step 6, the ALJ considered Ms. Vipperman's current impairments and determined they continued to be severe. *Id.* at 63–64. At Step 7, the ALJ determined Ms. Vipperman had the RFC to perform medium work, as defined in 20 C.F.R. § 404.1567(c), with numerous limitations. *Id.* at 64–68. Accordingly, the ALJ concluded that, since August 2015, Ms. Vipperman had been capable of performing past relevant work as a housekeeper as generally performed. *Id.* at 68–69. Ordinarily, the analysis would end here with a finding that the disability had ended. *See* 20 C.F.R. § 404.1594(f)(7). Nonetheless, the ALJ proceeded to Step 8, finding in the alternative that there were other jobs existing in significant numbers in the national economy which Ms. Vipperman could perform. *Id.* at 69. Based on these alternative findings, the ALJ concluded that Ms. Vipperman's disability ended on August 1, 2015 and that she had not become disabled again up to the time of the ALJ's decision. *Id.* at 70. Ms. Vipperman filed this action for review on October 23, 2019. [R. 1.]

## II

### A

The Court's review is generally limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence

standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389–90 (6th Cir. 1999).

**B**

Ms. Vipperman argues the ALJ's decision is not based on substantial evidence and is in fact contrary to the "uncontroverted medical and testimonial evidence." [R. 9-1 at 9.] She argues the ALJ simply substituted her impression of the Plaintiff's impairments over medical judgments in the record. *Id.* In response, the Commissioner argues the ALJ properly considered the entire record and reasonably found Plaintiff was not disabled as of August 2015. On review, Ms. Vipperman's disagreements do not warrant a reversal of the ALJ's determination.

**1**

Ms. Vipperman first attacks the ALJ's determination as to Ms. Vipperman's physical capabilities—specifically the finding that she was capable of performing work requiring lifting

up to fifty pounds. [R. 9-1 at 10.] Notably, this most recent determination by the ALJ as to Ms. Vipperman's physical limitations is consistent with the September 2010 decision. Ms. Vipperman was found to be disabled in the 2010 decision based on her mental limitations, not her physical limitations. [Tr. 121–22.] Indeed, in the 2010 decision, the ALJ found that Ms. Vipperman had the "ability to perform work at all exertional levels . . . ." *Id.* at 121. In the 2018 decision, the ALJ found that Ms. Vipperman was more limited, but still able to perform some work from a physical standpoint. *See id.* at 64.

This established, at base, Ms. Vipperman's current argument amounts to a disagreement with the ALJ's RFC assessment. The RFC assessment is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Soc. Sec. Rul. 96-8p, 61 Fed. Reg. 34,474, 34,475 (Jul. 2, 1996). More simply, the RFC is "what an individual can still do despite his or her limitations." *Id.* The ALJ, "[i]n assessing the total limiting effects of [the claimant's] impairment(s) and any related symptoms, [] will consider all of the medical and nonmedical evidence" in the record. 20 C.F.R. § 404.1545(e). Notably, the ALJ is required to incorporate only those limitations she finds credible into the RFC assessment. *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

Ms. Vipperman fails to show how the ALJ's determination as to her physical limitations are unsupported by substantial evidence. Ms. Vipperman argues the ALJ disregarded medical evidence but, in terms of evidence that may contradict the ALJ's findings, only points to one physical therapy report indicating "that Plaintiff is unable to lift more than 5 pounds." [R. 9-1 at 12.] While Ms. Vipperman appears to rely almost entirely on this one report in attempting to

6

establish this lifting limitation [*see id.* (citing Tr. 1042–43)], during the hearing, she also indicated she was temporarily not supposed to lift anything over ten pounds due to issues with her shoulder. [Tr. 85–86.] But, as noted by the Commissioner, there is no other evidence in the record indicating such extreme limitations. [*See* R. 13 at 10.]

The ALJ considered this PT report and Ms. Vipperman's subjective complaints [*see* Tr. 65] but also considered evidence that indicated Ms. Vipperman's impairments were less severe. Indeed, the ALJ found that, on the whole, "the medical evidence shows mild objective findings and minimal conservative treatment." *Id.* at 67. And, the ALJ noted further that Ms. Vipperman, based on her own representations, was able to "prepare simple meals [and] perform household chores such as dusting and washing dishes." *Id.* (citing *id.* at 309). So, considering the record as a whole, the ALJ determined Ms. Vipperman could perform medium work, albeit with many limitations. *Id.* at 64–68. In coming to this determination, the ALJ considered the evidence relied on by Ms. Vipperman but, in light of other evidence, simply did not accord it the weight Ms. Vipperman believes is proper. This is not error. In fact, as fact finders, ALJs are expected to weigh the evidence and determine the credibility of a claimant's subjective complaints.[1] *See Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978) (discussing the advantage an ALJ has in making credibility determinations given her role as finder of fact in the hearing setting).

### 2

Next, Ms. Vipperman takes issue with the ALJ's finding that Ms. Vipperman exhibited improvement as it concerned her mental limitations. Here, Ms. Vipperman appropriately notes

---

[1] Ms. Vipperman also takes issues with the hypotheticals posed to the vocational expert, arguing that the questions which did not account for her subjective complaints were improper. [R. 9-1 at 12.] But the Court has already found that the ALJ properly relied on the more objective evidence in the record and, consequently, this line of argument is unavailing.

the significance of this finding as it relates to the overall determination that disability had ended. [R. 9-1 at 10–11 ("[T]he basis for the Plaintiff's original award stemmed mostly from her severe mental health issues . . . .").] As noted above, in the September 2010 decision awarding Ms. Vipperman disability benefits, the ALJ stated that "claimant's ability to perform work at all exertional levels has been compromised by nonexertional limitations." [Tr. 121.] In fact, review of the 2010 disability finding indicates that Ms. Vipperman was found to be disabled based solely on her mental limitations. *Id.* at 119–22. So, determining whether there was substantial evidence to support the ALJ's conclusion that Ms. Vipperman showed medical improvement specifically as it related to her mental impairments is key to the ultimate disability conclusion.

Ms. Vipperman advances one argument related to these findings, arguing the ALJ erred by considering the fact that Ms. Vipperman discontinued mental health treatment after 2015. [R. 9-1 at 11; *see also* Tr. 66.] Ms. Vipperman contends this should not have been considered as she discontinued therapy at the local mental health treatment facility only because the provider failed to accommodate her disabling fear of being around men. [R. 9-1 at 11.] Indeed, Ms. Vipperman testified at the hearing that her issues at the facility stemmed from her prior negative experiences with men, stating that should "couldn't handle" an assignment to a male caseworker. [Tr. 98.]

It does appear that the ALJ found significant that Ms. Vipperman provided no evidence of in-person treatment for her mental impairments during this time. *Id.* at 66. ("There is no evidence of treatment form [sic] mental impairments during the applicable period."). Logically, a decision to discontinue mental health treatment can serve as an indication that one's mental health has improved—especially when there is no indication of any subsequent deterioration. And, Ms. Vipperman's argument that her failure to seek in-person treatment should not have been considered is unconvincing on review. Ms. Vipperman fails to point to any evidence to

8

support the contention that her fear of men was the reason she left the clinic.  And, as pointed out by the Commissioner, Ms. Vipperman's claim that she ended treatment for this reason is "undermined by treatment notes from that provider showing that she was seen by female therapists in her home."  [R. 13 at 9 n. 8 (citing Tr. 1014, 1015, 1017).]

The ALJ's finding that Ms. Vipperman's decision to discontinue mental health was probative of mental health improvement is supported by additional evidence.  For one, the ALJ noted that in the time period leading up to the cessation of disability benefits, Ms. Vipperman's psychiatric evaluations were increasingly positive.  For example, in a March 2013 psychiatric clinical note, the provider noted that Ms. Vipperman showed no sign of "perceptional disturbances," demonstrated logical thoughts, normal demeanor, and cooperative behavior, while also appearing agitated.  [Tr. 1010.]  In a May 2015 consultative psychological examination with Dr. Megan Green, Ms. Vipperman again showed positive signs of mental functioning.  *Id.* at 599–602.  There, Dr. Green reported that Ms. Vipperman was "alert and oriented in all spheres," as well as "cooperative [and] friendly."  *Id.* at 601.  Dr. Green further found that Ms. Vipperman's memory was "normal" and that her concentration was only "mildly impaired."  *Id.*

In the absence of further psychiatric evaluations after August 2015, the ALJ was left to rely on the reports of medical providers who attended to Ms. Vipperman in other contexts.  Similarly, in these reports, the medical providers reported Ms. Vipperman was attentive and in a positive mood.  For example, as part of a report following an annual visit in November 2015, the medical provider commented on Ms. Vipperman's psychiatric condition as follows: "Oriented to time, place, person and situation. Appropriate mood and affect."  Tr. 856.  Similarly, at an appointment for respiratory issues, the medical provider noted: "Mood is happy and cooperative with examination."  *Id.* at 1145.  Lastly, the ALJ found significant that Ms. Vipperman was able

9

to shop on her own for up to an hour at a time, noting that this representation cut against Ms. Vipperman's professed inability to be around others. *Id.* at 67. In light of the evidence as a whole, the ALJ accorded "some weight" to Dr. Green's May 2015 opinion that Ms. Vipperman would likely be "capable of understanding, remembering, and carrying out instructions and sustain[ing] persistence and pace and of adapting to change[.]" *Id.* at 68. In sum, the ALJ relied on substantial evidence in coming to her conclusion regarding Ms. Vipperman's mental improvements.

Delimiting the scope of the ALJ's decision is key in this context. The record indicates that Ms. Vipperman has serious limitations stemming from her serious mental impairments. For example, Ms. Vipperman testified that she continues to rely on medication to address both her anxiety and nightmares. [Tr. 90.] The ALJ did not ignore these mental impairments but simply found that Ms. Vipperman had made improvements in dealing with the attendant limitations. *Id.* at 60–63; *see also id.* at 68 (giving little weight to state agency medical professionals who opined Ms. Vipperman had no severe impairments). As set forth above, this finding was based on the most recent medical reports and Ms. Vipperman's ability to maintain relatively normal functioning without the need to participate in mental health treatment. In summary, the record indicates that Ms. Vipperman made significant progress in her mental limitations from 2010 to 2015 and, following 2015, interacted sparingly with mental health professionals. The medical professionals she did interact after 2015 with noted no issues with her mental well-being. *Cf. Kennedy*, 247 F. App'x at 765. So, based on the record, the ALJ concluded Ms. Vipperman had made medical improvement since 2010 and, in line with these improvements, could perform certain jobs in the national local economy.

10

Like the ALJ, this Court can only review the record available. And, in undertaking that review, this Court must defer to the ALJ's conclusions where there are conflicts in the evidence or potential issues with witness credibility. *Ulman*, 693 F.3d at 713; *see also Mitchell v. Comm'r of Soc. Sec.*, 330 F. App'x 563, 568 (6th Cir. 2009). The question before this Court is simply whether the ALJ's decision is supported by substantial evidence. *See Ulman*, 693 F.3d at 714; *Kennedy*, 247 F. App'x at 764. On review, the Court finds that it is.

### III

The ALJ's decision that Ms. Vipperman mental functioning had improved such that she was no longer disabled is supported by substantial evidence in the record. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that Plaintiff Norma Jean Vipperman's Motion for Summary Judgment [**R. 9**] is **DENIED**, and the Commissioner's Motion for Summary Judgment [**R. 13**] is **GRANTED**. Judgment in favor of the Commissioner will be entered promptly.

This the 27th day of July, 2020.

Gregory F. Van Tatenhove
United States District Judge